Good morning, and may I please the court. Arsarian for petitioner Abagyan. This is also an ineffective assistance of counsel claim, and the main reason why the agency denied reopening in this case was that, according to the agency, my client waited too long to hire a new attorney to discover that previous attorney or attorney impersonators were ineffective, and therefore she wasn't too diligent. Well, your client waited 10 months after she knew she had been removed, right? Well, time-wise, I agree with Judge Callahan. That's exactly 10 months before she consulted with me. However, if we look at the removal order and we show to any reasonable person who is a United States citizen, perhaps born in the United States what's bad news when you get removed? It's kind of like if you get sent to jail. Things aren't going well. At some point, you don't have to know all the nuances or what someone did wrong. It's not good when you lose your case. The problem is the decision in February 2005 doesn't say she was orderly removed. What it says, the board affirms without opinion the results of the decision below. Therefore, the decision is final. It doesn't say what decision. So when an alien represented by attorney impersonator who claims to be an appellate lawyer receives the decision, receives the decision perhaps in her home that says the board affirms the decision below without actually discussing the decision, there is no talking of removal or deportation. There is no single word of deportation in this letter. It's just one sentence. She's not unnoticed. She's not a lawyer. And the person who helps her, in a quotation mark, helps her, he's not there to explain it to her. But he tells her you have to wait until your United States citizen daughter's petition becomes approved, and only then you can file for the green card. That's a triggering event. And he tells her that before or after the BIA approves the removal order. Well, I'm not sure at what time he tells her, but her affidavit states that he specifically told us you have to wait until the petition is approved, only then we can file for a green card. And because the petition wasn't even approved, she's not there to explain it to her. So she's sitting and waiting based on that fraudulent and misadvice, and then she happens to consult with me. I wasn't able to determine because she didn't have anything to show it to me. So I had to file a motion with the Immigration Court to review the file. I filed it at the beginning of December.   They allowed me to come to court and review the file. at the beginning of January. Only on January 4th when I actually reviewed the motion, I realized what happened to this particular woman, that she was misadvised. You got this file a lot faster than your predecessor got the file. Right. I went to Immigration Court and asked them to show me the file. It took them one month to get the file. I didn't order the copies. Most of the time we do order the files. In this particular case, I realized it will take three to four months. So I said, why don't I just review the file in court? And it took them a month because of the holidays to call me to court to review it. So on January 4th, when I reviewed the file, I realized what the problem is. So immediately we told her, and we filed within 90 days of that specific day of January 4th. So I disagree with the agency's assessment that she was Well, in your instance, why did the file make any difference at that point? I'm sorry. I mean, it doesn't seem to have been where the delay is, but in your instance, really the file didn't matter because she The ineffectiveness was telling her something that was just incorrect. It didn't really have anything to do with it, with the file. Well, I didn't know what happened to her. Very often when a client tells you this is what happened to me without showing documentation, it's not exactly what it is. They may simply misunderstand. So I had to make sure that what You didn't actually know whether there had been a final removal order. She did not know what was happening. She knew that there was a petition by her daughter filed, and she had to sit and wait until the petition is approved. That's all she told us. So I had to review the file to understand what's happening. So I believe that because she was affirmatively misadvised, in fact, she was defrauded by this notario right after she was misadvised by the previous attorney and his cohort, another notario, she was not in a position to constantly be questioning the acts of the people who represent to be professional lawyers. Counsel, when you reviewed the file, what did you find that told you what to do next? Well, I found there is a removal order, and I found that her daughter was mentioned in her asylum application as an immigrant arriving into the United States in 1989, and that was enough to put previous attorneys and the judge and the government attorneys on notice that she had a legal status. And any immigration lawyer knows that if you legally arrived into the United States, it takes about five years to become a United States citizen. She arrived in 1989. Supposedly, she would have been a citizen by 1995. Well, it is true that she became a citizen in March of 2003, but the trial happened in November of 2003. Neither judge nor government attorney nor her own lawyer ever asked whether her daughter is a citizen of the United States. And unfortunately, if the order is removed and she's not using her daughter to petition for her during the trial, she no longer can tap into this avenue of relief. And this is equivalent of a patient dying on a surgery table when a simple tablet of aspirin would have helped her to be healthy. Well, let me ask about that, because this is — if you prevail here, what happens? Because the only thing, as I understand it, that would have mattered in the proceedings itself, and if this had all been understood, is that you could have asked for a continuance, or the lawyer could have asked for a continuance. I'm sorry? What would have happened, the lawyer would have filed all the documents, presented those documents in court, and one of the — one of two things would have happened. Either judge would have heard her applications for relief based on her permanent residency applications, based on the daughter, or both parties would have agreed in court to terminate proceedings, and she would have filed administratively for the green card before USCIS. But I thought that often neither of those things happened, and the government insists on going forward, and it's in the discretion of the IJ whether to continue the case while the application for change of status is processed or not. Is that not true? That's not exactly what happens, especially in Los Angeles court when the delays sometimes are five to eight years long. However, even if that would have happened, she would have had a claim at the board that adjustment was not available or was not available to me because judge refused to give her a continuance. Nevertheless, her relief would have been protected. She would have claimed the relief in court. If judge refuses to continue, she would have a claim at the board. But ultimately — all I'm trying to establish is that ultimately it wasn't assured. Well — You're saying it was likely as a practical matter, but as a legal matter — As a legal matter, 100 percent. In immigration court, no judge goes forward on asylum if there is an immediate relative petition, a United States daughter or a husband, that is pending. Judges don't want to hear asylums if there is an easier way to give her permanent residency. So I have never heard a judge who would say, I will hear asylum and I'm not going to wait for the petition approval. It has never happened because it's five to four hours trial on asylum versus about 15 minutes trial on a green card. All she needed to show was she's not a criminal, her daughter is really her daughter, she's a real citizen, and there is no public charge issue if the daughter is employed. It's very simple, about 15 minutes trial versus three, four, sometimes five hours and years of litigation and asylum. So as a practical matter and as a reality in immigration court, in Los Angeles at least, it is pretty much 100 percent. Unless she's a criminal, she would have gotten her green card. I had a different impression from the fact that we seem to have a fair number of cases in which there is a pending petition for change of status, but it hasn't. And I thought that you could not actually adjudicate those in the court. You had to adjudicate them for the agency. I want every petition by a United States citizen daughter is adjudicated by the agency, but that's only a proof of the relationship between a United States citizen daughter and a mother, which is not a created relationship like the relationship between husband and wife. It could be artificially created or fraudulently created. I see what you're saying. In this case, it's just birth certificate, which is in the record, shows clearly that she's her mother, citizen's mother. Therefore, that step, that questioning of the relationship is not there. Most of the cases in immigration court usually terminate if the daughter or son is a citizen and they just go on to the agency to file for the green card. This is not a created relationship. Now, what do you want us to do now? Exactly what? Well, I would like this case to be remanded to the board with instruction for a reopening. If it's reopened, my client will get her green card through her United States citizen daughter. Well, the board still wouldn't have to reopen it. They would just listen to the motion to reopen, right? Well, at this point, the only issue before the board, they agreed with us that we complied with all the procedural steps of Lozada. The only issue before them is whether my client was due diligent, whether it was reasonable for her to sit and wait because she was misadvised by a person who claimed to be an appellate lawyer, that she has to wait until petition is approved and only then act on it. Okay. May it please the court, my name is Edward Duffy and I represent the respondent, the attorney general in this matter. Your Honor, the board's decision that denied petitioner's motion to reopen, where she alleged ineffective assistance of counsel, is not arbitrary, irrational, or contrary to law because the petitioner in this case did not exercise due diligence in pursuing her claim. What the evidence shows and what the board relied upon is the affidavits submitted by the petitioner and her daughter in this case. And the affidavits are silent as to what happened between the 5 February issuance of the order of removal by the board and December. There is no evidence at all as to what she did during this time frame. We don't know why she went to see Mr. Sharon. We have no idea what triggered her seeking out counsel. And therefore, because there's no evidence in the record to determine whether or not she exercised due diligence, the board's decision is supported by substantial evidence. Just let me back up a minute. I'm just looking at the affidavit in light of what you just said. And I'm looking, I guess, at the daughter's affidavit, but I think the mother's is similar. There is an explanation. It says, after the case was denied by the immigration judge, we retained – oh, this is after the immigration judge, we retained this mystic vorg. And he filed a petition for alien relative on my behalf and informed us we needed to wait before we could apply for a green card. So that's what happened. Well, that happened back – that petition was filed back in 2003, right? If you look at the timeline of the case, it was filed on November 25, 2003. That's when the I-130 was filed. And he told them that he needed to wait and he couldn't do anything else, so they waited. That's what happened. Well, then the intervening event between, as the court noted early, when my esteemed colleague was speaking in court, a final order of removal was entered in between that should trigger some concern in a petitioner that something bad is about to happen. And, indeed, we don't know at that point what she did. And that's where the silence – You're saying the silence is for 10 months. The silence is for 10 months. It's a 10-month period where we don't know what she did. After that, once she spoke to counsel – Well, what happens if you reopen – this is something I've always been a little confused about. How much do you have to show – I mean, why wouldn't the appropriate response to that observation be, okay, let's have a hearing, we'll find out? Well, they have to show – they have to make a showing that they exercised due diligence in their affidavits and say what they did. If you look at the Court's cases – But she did what she did, where he told us this lawyer, who isn't a lawyer, told us to wait and we were waiting. Well, part of that is they've also alleged in their motion to reopen that Mr. Gavour's negligence did not prejudice them in any way. I mean, that's in the motion to reopen. I think it's in AR page 30, if I'm not mistaken, that they weren't prejudiced by the delay caused by Mr. Gavour, by his advice, because it took the time to file the adjustment status that had already run. However, they could have filed a timely motion to reopen. They could have also filed a motion to remand while the Board's decision was pending in the initial matter, citing the I-130 and requesting the Board reopen – send it back so they can adjudicate or request that the I-130 be looked at and see whether they were prima facie eligible for relief under the I-130. So essentially, the case involves either the two-and-a-half-year delay from the initial – what they say is the initial ineffective assistance of their original counsel, Mr. Spence, who was an attorney, or the ten-month period between February 2005 and sometime in December of 2005 when they would have been able to file the motion to reopen. They had 90 days to do it after the Board's decision. So based on that delay, Your Honor, there's nothing in the record that refutes the Board's claim. Certainly, the Board did not abuse its discretion in denying it based on the facts as presented to the Board in the motion to reopen. Well, I can certainly see that probably there was not due diligence in trying to get some type of hearing on the removal. But as to the capacity to grant her some relief because her daughter is now a citizen, it seems to me that they were waiting because they've been told to wait, and that as to that claim, we ought to be sending it back. Your Honor, except for the fact that they say in their motion filed with the Board that they weren't prejudiced by Mr. Gavorg's actions. That's a different question. They weren't prejudiced with regard because it was already too late. But in other words, his information was so bad that, in fact, by the time they talked to him, it was too late. By the time they talked to who, Your Honor? Mr. Gavorg. Okay. But that doesn't necessarily subsume the equitable tolling question or the answer to your question, why were they waiting? They were waiting or their due diligence. In other words, the due diligence question and the prejudice question are not the same question. They are to the extent that if the counsel, their due diligence, they say they're not prejudiced by his error. But they had no idea whether they were prejudiced by his error. That's the whole point because they're lay people. They didn't know that. In fact, it turns out they weren't prejudiced by his error. And they also didn't know that when he told them to wait, that that was a hopeless and pointless thing to be doing because there was nothing they could have done at that point except file a motion to reopen. So they weren't prejudiced in the sense that he was telling them to do something when it was already too late to do it. I would argue that it may or may not have been already too late for them to do it as far as what the immigration proceeding is concerned. However, we still have the problem with the gap in their time in the record. There is no explanation as to what or why they were doing and no explanation as to why they want to see Mr. Serum. There's none. And that information would have been useful for the board to have in deciding the case. And faced with the vacuum, the board came up with the conclusion that they did not exercise due diligence. And since the review here is whether the board abuses discretion, that's not an abuse of discretion by the board. If you take a 71-year-old woman who has a citizen daughter here, you order her removed. Does she have to then wait five years to come back? I'm not sure. Once she's deported from the United States, Your Honor? Yes, let's assume. Yes, she would have to wait or she could petition the Attorney General to return before that time. And ask for a waiver. And what does the Attorney General do in those cases? Adjudicates the request for the waiver, Your Honor. I understand that, but how does he treat those? Does he grant them? It's a case-by-case basis, Your Honor. Some are granted, some are not. I am not certain how it would happen in this case, and I'm not aware in many cases of how they're treated. They're generally petitions that are filed at the consulate abroad and then adjudicated in the United States. Do you agree with Mr. Sarian's explanation of what would have happened if she had, in fact, brought this up, if her attorney had brought up the U.S. citizen daughter or I guess it was an LPR daughter and later a U.S. citizen daughter during the proceedings? Your Honor, in many cases, they would – my experience has been in immigration court and reading these records over the years, has been that the immigration judge will do one of several things, and most of them were, I think, properly quoted. One of the things is suspend the case, withdraw the case, ask the DHS to withdraw the case. One of the things the judge will look at is is there prima facie evidence of the relationship. The documents could be questioned at some point, but generally the I-130 has to be adjudicated before the immigration judge would entertain adjustment of status. So frequently they do what Mr. Sarian said exactly they do. They will administratively close the case, allow it to proceed administratively through DHS, through the service centers, and then see what happens with the adjustment of status application. But sometimes they will hold on to the case. But you essentially agree, this is what I was concerned about, that it really – the likelihood is that if she had raised it, the proceeding would not have gone on. They likely would have asked her to withdraw her asylum claim and proceed on the I-130 and delay the case in some manner until the I-130 was adjudicated. I see my time is up, Your Honor. Thank you very much. Thank you. Thank you, counsel. I think you've used up your time, so. The case of Avakian v. Holder is submitted. And we'll go on to respond to Diego Rodriguez.
judges: Fletcher B. , Berzon, Callahan